United States District Court
Southern District of Texas
**ENTERED**
May 07, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| DANIEL RODRIGUEZ, § § Plaintiff, § VS. § CITY OF LAREDO, *et al*, § § Defendants. § § § § § | CIVIL ACTION NO. 5:18-CV-15 |

# ORDER

Plaintiff filed this lawsuit against the City of Laredo (the City) and Laredo Police Officers Marco Antonio Camero and Jennifer Salazar (the Officer Defendants). Pending are the City's Motion for Summary Judgment (Dkt. No. 60) and the Officer Defendants' Motion for Summary Judgment (Dkt. No. 62). The Court has carefully reviewed the parties' arguments, the record, and the applicable law, and hereby **GRANTS** the City's Motion for Summary Judgment and **GRANTS IN PART AND DENIES IN PART** the Officer Defendants' Motion for Summary Judgment.

**I.    Background**[1]

In January 2017, Plaintiff, a 72-year-old man, dialed 911 and requested police presence at his residence (Dkt. No. 60-11 at 19). Officer Salazar responded to the residence and found Plaintiff standing outside (*id.* at 4). Plaintiff, who sported a bath robe and pajamas with his hands tucked his into his pockets, shouted at Officer Salazar and demanded that incoming police units not activate their sirens (*id. at* 4–

---

[1] The facts are gathered from the parties' evidence and are undisputed unless noted otherwise.

O

5). When Officer Salazar inquired into Plaintiff's emergency, Plaintiff responded, "You are here to take my orders and serve me" (*id.*). Officer Salazar asked that Plaintiff reveal his hands so she could verify whether he had weapons, but Plaintiff refused (*id.*).[2] Officer Salazar continued to insist that Plaintiff remove his hands from his pockets until he shouted, "You want to check me, go ahead" and extended his arms to his sides and turned his back to her (*id.*). She then placed her hand on Plaintiff's shoulder to conduct a "pat down," but Plaintiff interrupted by walking away (*id.*).

Officer Camero arrived at the residence shortly, and the parties stood outside of Plaintiff's front lawn, which "had a slight upward slope" (Dkt. No. 62-3 at 3). Plaintiff, who "continued to rant," greeted Officer Camero with a handshake, but Officer Camero refused the gesture (*id.*). Plaintiff seemed offended, so Officer Camero initiated a second handshake with him (*id.*). During the handshake, Officer Camero "decided to detain" Plaintiff and instructed him to place his hands behind his back (*id.*). As Officer Camero gripped Plaintiff's right hand, Plaintiff "stiffened" his arm and pulled away, and all of the parties collapsed to the ground moments later (*id.*).

Although it is undisputed that the parties collapsed during the handshake, the parties offer contradictory accounts of the facts immediately preceding their fall. Officer Camero asserts he and Plaintiff collapsed because he had trouble balancing:

> While still holding on to [Plaintiff's] right hand, we both fell to the lawn. The front lawn had a slight upward slope which made it difficult to get a good footing. I believe [Plaintiff] fell face down. I remember falling on top of him and I could have landed on his left thigh. I recall Officer Salazar on the ground with me.

---

[2] Although Plaintiff vaguely disputes that he "failed to heed" any "orders or instructions," he does not specifically dispute that he failed to show his hands to Officer Salazar (Dkt. No. 71-1 at 3).

(*id.*). Officer Salazar asserts the same, adding that she was knocked to the ground as Plaintiff and Officer Camero fell downward (Dkt. No. 62-2 at 4). Plaintiff, conversely, asserts that he fell to the ground because an Officer Defendant kicked him twice:

> As I was standing and talking to the officers, one of the officers, suddenly and without warning, kicked me close to my crotch area and kicked me a second time to my rib cage. Because of this physical attack that was made, I fell to the ground.

(Dkt. No. 71-1 at 3).

By all accounts, seven other police officers arrived at the residence after the parties fell.[3] While the parties were on the floor, the Officer Defendants placed Plaintiff in handcuffs and into a police cruiser but released him shortly without criminal charges (Dkt. Nos. 62-2, 62-3). Plaintiff sustained injuries to his ribs, and his eyeglasses were broken (Dkt. No. 71-1 at 3).

Plaintiff filed this case in state court (Dkt. No. 60-11 at 8), and Defendant removed the case based on federal question jurisdiction (Dkt. No. 2). In his complaint, Plaintiff asserts (1) a 42 U.S.C. § 1983 *Monel* claim against the City, (2) 42 U.S.C. § 1983 claims against the Officer Defendants, and (3) a state-law claim against the Officer Defendants (Dkt. No. 46). All Defendants now move for summary judgment.[4]

**II.    Legal Standard**

---

[3] Dkt. Nos. 60-1, 60-2, 60-3, 60-4, 60-5, 60-8, 60-9. All seven police officers have been dismissed from this lawsuit (Dkt. No. 65).

[4] In support of their summary-judgment motion, the Officer Defendants filed a Supplemental Attachment (Dkt. No. 63), which contains DVD video footage from Officer Camero's dash cam. The Officer Defendants ask that the Supplemental Attachment be made a part of the record. Their request is **GRANTED**, and the Supplemental Attachment is hereby **DEEMED FILED**.

O

Summary judgment is appropriate if the record shows there is no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). A fact is material "if and only if proof of its existence might affect the outcome of the case." *Roy v. City of Monroe*, 950 F.3d 245, 254 (5th Cir. 2020). The moving party bears the initial burden of informing the Court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and designate competent summary judgment evidence "showing that there is a genuine issue for trial." *Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 164 (5th Cir. 2006); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). However, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When ruling on a motion for summary judgment, the Court views all facts and inferences in the light most favorable to the nonmoving party and resolves all

O

disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The Court "may not make credibility determinations or weigh the evidence" in ruling on a summary-judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, when the nonmoving party has failed "to address or respond to a fact raised by the moving party and supported by evidence, then the Court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for summary judgment." *Broadcast Music, Inc. v. Bentley*, No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

### III. Analysis

#### A. The City's Motion for Summary Judgment

The City argues that Plaintiff has failed to identify or produce evidence of an unconstitutional policy or practice (Dkt. No. 61 at 5). Plaintiff, without citing to any evidence, responds that the City "had a policy and/or custom in place that enabled its agents and employees to act with deliberate indifference" (Dkt. No. 71 at 2).

"To establish municipal liability under § 1983,[5] a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Trammell v. Fruge*, 868 F.3d 332, 344 (5th Cir. 2017) (cleaned up). As the City argues, Plaintiff has not provided any evidence that a policymaker promulgated an official policy which engendered the

---

[5] 28 U.S.C. § 1983 prohibits a person, "under color of any statute, ordinance, regulation, custom, or usage of any State" from subjecting, or causing to be subjected, any citizen or any person within the jurisdiction of the United States "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

O

alleged constitutional violations in this case. Because Plaintiff has failed to meet his summary-judgment burden, the City is entitled to summary judgment on this claim.

### B. The Officer Defendants' Motion for Summary Judgment

#### 1) Plaintiff's § 1983 Claims

Plaintiff brings § 1983 claims for violations of rights conferred by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution (Dkt. No. 46).[6] The Officer Defendants raise the defense of qualified immunity (Dk. No. 9).

"Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). "[O]nce qualified immunity is properly raised, the plaintiff bears the burden of negating the defense, even on summary judgment." *Richardson v. Univ. of Tex. Sys.*, No. 5:19-CV-00271-XR, 2020 WL 1159038, at *3 (W.D. Tex. Mar. 9, 2020). Thus, qualified immunity "alters the typical summary judgment burden of proof in that once the defense is pleaded by an official, the burden shifts to the plaintiff to rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established federal law." *Hunt v. Pierson*, 730 F. App'x 210, 215–16 (5th Cir. 2018). Although it is the plaintiff's burden to negate the defense, the Court must still view all facts and draw all inferences in his favor. *Hanks v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017).

Federal courts evaluate claims of qualified immunity in a two-step analysis and have discretion to decide which prong to address first: (1) whether the plaintiff

---

[6] § 1983 "is not itself a source of substantive rights" but instead "provides a method for vindicating rights elsewhere conferred." *Flores v. City of Palacious*, 381 F.3d 391, 404 (5th Cir. 2004).

O

"has adduced sufficient evidence to raise a genuine issue of material fact suggesting [that the Officers] violated an actual constitutional right; and (2) whether [the Officers'] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Richardson*, 2020 WL 1159038, at *4 (citation omitted). To defeat qualified immunity, a plaintiff "must present sufficient evidence to create a genuine dispute of material fact regarding both prongs of the two-prong qualified immunity test." *Beaulieu v. Lavigne*, 539 F. App'x 421, 424 (5th Cir. 2013).

        a) <u>Plaintiff's Claim for Violation of Fourth Amendment Right</u>

The Court will begin with the first prong of the qualified-immunity analysis,[7] *i.e.*, whether Plaintiff has adduced sufficient evidence to raise a genuine issue of material fact suggesting that an Officer Defendant violated a constitutional right. Plaintiff claims the Officer Defendants violated his Fourth Amendment right to be free from excessive force. To prove a claim for exercise force, a plaintiff must "show (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (citation omitted). Plaintiff's injuries are not in dispute by the parties, so this action centers on elements two and three.

Determination of whether force is excessive requires careful attention to the facts and circumstances of each case. *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009). "Factors to consider include the severity of the crime at issue, whether the

---

[7] Plaintiff does not dispute that the Officer Defendants properly raised qualified immunity.

O

suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The Court's inquiry is limited to whether the officer "was in danger at the moment" when the officer applied the force at issue. *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011).

In the Fifth Circuit, "using force, such as punches or kicks, to gain control of a non-compliant suspect" is permissible, *Moreno v. Meyer*, No. 18-CV-00427-JKP, 2020 WL 50985, at *3 (W.D. Tex. Jan. 3, 2020), so long as the officer uses "measured and ascending" actions that correspond to the plaintiff's resistance. *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012). So, an officer may punch or kick a plaintiff if the plaintiff strikes him first, *Griggs v. Brewer*, 841 F.3d 308, 316 (5th Cir. 2016), or if the plaintiff threatens to commit "suicide by cop" or challenges the officer to a fight. *Moreno,* 2020 WL 50985, at *3. In this case, the parties present contradictory accounts of the facts immediately preceding their fall, which creates a factual dispute. Specifically, Plaintiff asserts an Officer Defendant kicked his groin and ribs which caused him to fall and sustain injuries, while the Officer Defendants deny kicking Plaintiff and assert that they fell because the ground was uneven.[8]

The Court finds that the parties' factual dispute is material because its resolution "might affect the outcome of this case." *Roy v. City of Monroe*, 950 F.3d 245, 254 (5th Cir. 2020). Proof that an Officer Defendant kicked Plaintiff might establish

---

[8] It is inconsequential that Plaintiff does not specifically assert which Officer Defendant struck him. *See Sanchez v. Fraley*, 376 F. App'x 449, 454-55 (5th Cir. 2012) (affirming denial of summary judgment on excessive force issues where witness could not see some of the officers' acts and noting that challenges to witness's "credibility and personal knowledge" are issues for the fact finder (citing *Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005)).

excessive force, given that Plaintiff never struck or threatened any Officer Defendant, and the Officer Defendants released him without criminal charges. On the other hand, proof that the parties collapsed accidently due to the ground's unevenness might defeat Plaintiff's claim, given that Fourth Amendment jurisprudence requires intentional conduct to support a claim for excessive force. *Gorman v. Sharp*, 892 F.3d 172, 173 (5th Cir. 2018); *Moreno*, 2020 WL 50985, at *3. Because Plaintiff's "excessive force claim turns on which of two conflicting stories best captures what happened," summary judgment is precluded. *Cole v. Carson*, 935 F.3d 444, 455 (5th Cir. 2019); *see also Patterson v. Allen*, No. 3:12-CV-14, 2013 WL 4875092, at *3 (S.D. Tex. Sept. 11, 2013) (Costa, J.) (denying summary judgment and noting that if a jury found credible the officers' story that "no punch occurred," there would be no liability, but if the jury accepted the plaintiff's story, the "punch would support a verdict in his favor"); *Ramos v. Lucio*, No. 08-122, 2009 WL 700635, at *4 (S.D. Tex. Mar. 17, 2009) ("Summary judgment on the basis of qualified immunity [is] precluded by conflicting factual accounts of the circumstances surrounding the incident in question.").

The Court also finds that the parties' factual dispute is genuine, given that Plaintiff has presented sufficient evidence in his affidavit for a reasonable jury to return a verdict in his favor. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo, Bank*, 2020 WL 1230308 (5th Cir. 2020). Although "broad legal or factual assertions in an affidavit that are unsupported by specific facts are generally held to be conclusory," a more "detailed and fact-intensive

O

affidavit can raise genuine issues of material fact that preclude summary judgment." *Id.* But in any case, if a party's affidavit "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Ross v. Fed. Home Loan Mortg.*, No. 4:19-CV-1199, 2020 WL 1815887, at *3 (S.D. Tex. Apr. 8, 2020).

Plaintiff's affidavit details the following: Plaintiff dialed 911 to complain about a trespasser at his home; 9 Laredo Police Officers responded to the call; Officer Salazar was the first to arrive and the "second officer arrived shortly"; as Plaintiff stood upright and spoke to the Officers, an Officer kicked him near his "crotch area" and on his rib cage, which caused him to fall and sustain injuries to his ribs; while on the ground, Plaintiff lost his bathrobe, and the Officers placed him in handcuffs; and the Officers placed Plaintiff in a police cruiser but released him without criminal charges (Dkt. No. 71-1 at 3). "Although arguably self-serving," Plaintiff's affidavit is not conclusory, and is based on personal knowledge, which creates a genuine issue of fact that overcomes summary judgment. *See C.R. Pittman Const. Co. v, Nat. Fire Ins.*, 453 F. App'x 439, 443 (5th Cir. 2011) ("A party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment" (citation omitted)).

Nor is Plaintiff's affidavit "blatantly contradicted by the record." Rather, the record in this case "presents a quintessential example of the classic 'he said, she said' swearing match, making it obvious that [the Officer Defendants'] summary-judgment motion turns entirely on a genuine issue of fact that is clearly material." *Faulkenberry*

O

*v. Lee*, 307 F. App'x 813, 814 (5th Cir. 2009); *Jonibach Manag. Trust v, Wartburg Enterprises*, 136 F. Supp. 3d 792, 822 (S.D. Tex. 2015). Namely, the Officer Defendants' account is supported by the declarations and incident reports that they authored,[9] while Plaintiff's account is supported by his affidavit.[10] In such "he said/she said" factual disputes, "[i]t is the jury's job to determine who is telling the truth about what happened." *Patterson*, 2013 WL 4875092, at *3–4 (denying summary judgment on the basis of qualified immunity in an excessive-force case where a "he said/she said factual dispute [] require[d] a credibility determination").

Similarly, the Officer Defendants' reliance on *Poole*, 691 F.3d 624, is misplaced. There, the Fifth Circuit affirmed a district court's finding that two police officers were entitled to qualified immunity where they responded to the plaintiff's resistance with "measured and ascending actions." *Id.* at 629. But crucially, the police officers in *Poole* submitted video evidence that captured "much of the dispute underlying the plaintiff's claims" and discredited the plaintiff's account. *Id.* Here, in contrast, the Officer Defendants' video evidence fails to capture any of the physical altercation and only captures Plaintiff's interactions with officers as he sat in a police cruiser. And

---

[9] Although the Officer Defendants also submit an expert report (Dkt. No. 62-5), which assumes that the Officer Defendants' version of the facts is true, that report merely opines that the Officer Defendants acted reasonably and does not offer any additional evidence to contradict Plaintiff's story.

[10] Plaintiff also submits a voluntary statement that he filed with the Laredo Police Department (Dkt. No. 62-1), which is insufficient to oppose summary judgment because it merely offers opinions and conclusions without any underlying facts. *Hunter v. James*, No. 3:14-cv-1817-B-BN, 2017 WL 3972004, at *5 (N.D. Tex. Aug. 2, 2017), *adopted* 2017 WL 3911606 (N.D. Tex. Sep. 5, 2017).

O

beyond that, the facts in *Poole* are inapplicable, which include the plaintiff resisting arrest by climbing away from the officers onto his truck and kicking them. *Id.*

Construing the facts and drawing all inferences in Plaintiff's favor, the Court finds that Plaintiff has sustained his burden of proving that a genuine issue of material fact exists as to whether an Officer Defendant violated his fourth amendment right to be free from excessive force. Thus, Plaintiff has satisfied the first prong of the qualified-immunity analysis.

The second prong of the qualified-immunity analysis is whether the Officer Defendants' actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. But given the parties present "different versions of the facts surrounding the incident in question," the "Court cannot ascertain whether [the Officer Defendants'] actions were objectively reasonable." *Gonzalez v. Cameron Cty.*, Tex., No. B-05-278, 2007 WL 1574292, at *11 (S.D. Tex. May 29, 2007); *see Patterson*, 2013 WL 4875092, at *4 ("[A] determination of the objective reasonableness of Officer Allen's conduct requires this court to settle on a coherent view of what happened in the first place." (cleaned up)); *see also Ramos v. Lucio*, No. b-08-122, 2009 WL 700635, at *4 (S.D. Tex. Mar. 17, 2009).

Thus, the Court finds that Plaintiff has presented evidence which satisfies both prongs of the qualified-immunity analysis. As such, the Officer Defendants are not entitled to summary judgment on the basis of qualified immunity for this claim.

b) <u>Plaintiff's remaining § 1983 Claims</u>

The Officer Defendants have also raised qualified immunity to Plaintiff's §

O

1983 claims for violations of rights conferred by the First, Fifth, and Fourteenth Amendments to the United States Constitution. Plaintiff has not provided any argument or evidence in response to the Officer Defendants' assertion of qualified immunity. Because he has failed to satisfy his summary-judgment burden, *see, e.g.*, *Richardson*, 2020 WL 1159038, at *3, the Officer Defendants are entitled to summary judgment on the basis of qualified immunity for these § 1983 claims.

2)  Plaintiff's state-law claim

Plaintiff filed his claim "under the statutory and tort law of the State of Texas" (Dkt. No. 46 at 1). In their summary-judgment motion, the Officer Defendants argue Plaintiff's state-law claim is barred by § 101.106(f) of the Texas Tort Claims Act.[11]

"Defendants are entitled to dismissal under § 101.106(f) if the plaintiff's suit against the government employee (1) is based on conduct within the general scope of that employee's employment with a governmental unit; and (2) could have been brought against the governmental unit under the Texas Tort Claims Act." *Richardson v. University of Tex. Sys.*, No. 5-19-cV-271-XR, 2019 WL 5306782, at *3 (W.D. Tex. Oct. 18, 2019) (citing *Morrison v. Walker*, 704 F. App'x 369 (5th Cir. 2017)). Although each of these prongs requires its own discrete analysis, *see id.*, the Officer Defendants have not identified either prong, let alone conducted any analysis, and instead offer their legal conclusion that Plaintiff's claim is barred. This

---

[11] The Officer Defendants also argue that Plaintiff's state-law claim is barred by § 101.106(e), which is clearly inapplicable given the City has not moved to dismiss the Officer Defendants from this case. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) ("[I]f a plaintiff brings virtually any state common law tort claim against both a governmental unit and its employees, § 101.106(e) will allow the employee defendants to be dismissed *if the governmental unit so moves*." (emphasis added)).

O

legal conclusion is insufficient to support a motion for summary judgment. *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985). Thus, the Officer Defendants are not entitled to summary judgment on this claim. The Officer Defendants may file a dispositive motion, which contains legal analysis, that addresses Plaintiff's state-law claim in accordance with the end of this Order.

### IV. Conclusion

The City's Motion for Summary Judgment (Dkt. No. 60) is **GRANTED**. The Officer Defendants' Motion for Summary Judgment (Dkt. No. 62) is **DENIED** as to Plaintiff's state-law claim and § 1983 claim for excessive force, and **GRANTED** as to Plaintiff's remaining § 1983 claims. The Court **SETS** the following briefing schedule:

1. The Officer Defendants may file a dispositive motion that addresses Plaintiff's state-law claim by June 6, 2020. Plaintiff may respond to the Officer Defendants' motion within 14-days of its filing.

2. The parties must file an Advisory that states whether they will proceed to trial on any of Plaintiff's remaining claims by June 26, 2020.

It is so **ORDERED**.

**SIGNED** this 7th day of May, 2020.

_____
Marina Garcia Marmolejo
United States District Judge